UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN PAULINE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 08-1788 (PLF) |
| UNITED STATES OF AMERICA et al., | ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OPINION AND ORDER

This is a wrongful death and survival action brought by John Pauline, son and estate representative of Joseph Pauline, who committed suicide on October 19, 2007 while a resident at the Washington, D.C. campus of the Armed Forces Retirement Home. The elder Mr. Pauline had long suffered from mental illness, and plaintiff contends that his father received inadequate care in the months preceding his death, proximately causing inordinate psychic distress and his ultimate suicide. The defendants in this action are the United States and the Armed Forces Retirement Home–Washington (collectively "the Federal Defendants"); Dr. Pearson Sunderland, a psychiatrist who evaluated Mr. Pauline shortly before his death; Ms. Viola Johnson-Robinson, a social worker who was assigned to assist Mr. Pauline; and Professional Services of America, Inc. ("PSA"), the company that employed Dr. Sunderland and Ms. Johnson-Robinson and provided them as contractors to the Armed Forces Retirement Home.

Plaintiff seeks survival damages on behalf of his father for the pain and suffering allegedly experienced in the months leading up to his death, as well as for his father's injuries stemming from the suicide itself. See 2d Am. Compl. ¶¶ 39, 47, 56, 65, 79. In addition, plaintiff

seeks wrongful death damages for his own grief and the loss of his father's companionship, as well as for medical, funeral, and burial expenses. Id. ¶ 81. The gravamen of plaintiff's complaint is that the defendants failed to recognize Mr. Pauline's increasing psychosis during the period preceding his death, and that, had they done so and consequently intervened at an earlier stage of this escalation, Mr. Pauline never would have committed suicide. See, e.g., Pl.'s Opp. at 51. In support of these claims, plaintiff has proffered reports and deposition testimony from three experts: Barbara Darlington, who is offered as an expert in nursing care; Dr. Harold J. Bursztajn, offered as an expert in psychiatry as well as on the issue of causation; and Dr. Diane Mirabito, offered as an expert in the field of social work. According to these experts, the defendants breached the standards of care governing their respective professions, proximately causing Mr. Pauline's pre-death suffering as well as his eventual death.

Presently before the Court are three motions for summary judgment: one filed by the Federal Defendants; another filed by Dr. Sunderland; and the third filed jointly by Professional Services of America, Inc. and Ms. Johnson-Robinson. Upon consideration of the parties' papers, the relevant legal authorities, and pertinent portions of the record in this case, the Court will grant in part and deny in part each of the three motions for summary judgment.[1]

---

[1] The materials considered in connection with the pending motion include: plaintiff's second amended complaint ("2d Am. Compl.") [Dkt. No. 42]; Federal Defendants' answer [Dkt. No. 45]; Dr. Sunderland's answer [Dkt. No. 43]; Ms. Johnson-Robinson's answer [Dkt. No. 52]; PSA's amended answer [Dkt. No. 55]; plaintiff's second amended expert designation [Dkt. No. 58]; Federal Defendants' motion for summary judgment ("Fed. Defs.' MSJ") [Dkt. No. 70]; Federal Defendants' statement of facts [Dkt. No. 70-54]; Dr. Sunderland's motion for summary judgment [Dkt. No. 68] and memorandum in support thereof ("Sunderland MSJ") [Dkt. No. 68-1]; Dr. Sunderland's statement of facts [Dkt. No. 68-2]; PSA's and Ms. Johnson-Robinson's motion for summary judgment [Dkt. No. 69] and memorandum in support thereof [Dkt. No. 69-1]; PSA's and Ms. Johnson-Robinson's statement of facts [Dkt. No. 69-2]; plaintiff's opposition to defendants' motions ("Pl.'s Opp.") [Dkt. No. 75]; plaintiff's statement of facts [Dkt. No. 75-1]; Federal Defendants' reply ("Fed. Defs.' Reply") [Dkt. No. 77]; PSA's and Ms. Johnson-Robinson's reply [Dkt. No. 78]; Federal Defendants' notice of supplemental

I.  DISCUSSION

*A.  Plaintiff's Failure to Respond to Certain Arguments*

Preliminarily, the Federal Defendants assert that the plaintiff has conceded the following points by failing to respond to them:  (1) the Federal Defendants cannot be held vicariously liable for any malpractice committed by Dr. Sunderland or Ms. Johnson-Robinson; (2) plaintiff cannot recover damages for grief or loss of consortium stemming from his father's death; and (3) the record could not support a finding that the elder Mr. Pauline suffered a heightened degree of mental distress in the months preceding his death, nor a finding that any such suffering was caused by the defendants.  Fed. Defs.' Reply at 2-5.  In addition, plaintiff's statement of genuine issues of material fact is alleged to be unresponsive to the facts asserted by the Federal Defendants in their statement of undisputed material facts.  Id. at 5-8.[2]

As the Federal Defendants note, plaintiff's opposition memorandum fails to respond to the Federal Defendants' argument that they may not be held vicariously liable for any malpractice committed either by Dr. Sunderland or Ms. Viola-Johnson, both of whom worked at the Armed Forces Retirement Home ("AFRH") as independent contractors rather than as employees of the government.  Accordingly, the Court finds this argument to be conceded.

---

authority [Dkt. No. 79]; PSA's and Ms. Johnson-Robinson's notice of supplemental authority [Dkt. No. 81]; plaintiff's response to notices of supplemental authority ("Pl.'s Resp. Supp. Auth.") [Dkt. No. 82]; Dr. Sunderland's notice of supplemental authority [Dkt. No. 83]; plaintiff's supplemental memorandum [Dkt. No. 90]; Federal Defendants' supplemental memorandum [Dkt. No. 97]; Dr. Sunderland's supplemental memorandum [Dkt. No. 96]; and PSA's and Ms. Johnson-Robinson's supplemental memorandum [Dkt. No. 95].

[2]   The Court agrees that plaintiff's statement of genuine issues of material fact does not respond to the Federal Defendants' own statement of facts, and that it is not in conformity with Local Civil Rule 7(h)(1).  In this case, however, plaintiff's failure is more a matter of form than of substance, as his opposition memorandum does set forth his version of the pertinent facts supported by citations to the record.

Plaintiff also explicitly concedes that the District of Columbia's Wrongful Death Act does not permit recovery for any grief or loss of consortium damages, and that the only wrongful death recovery available to him would be limited to the reasonable expenses incurred for Mr. Pauline's funeral.  See Pl.'s Opp. at 82 n.21.[3]

The Federal Defendants also maintain that plaintiff has conceded their arguments regarding Mr. Pauline's alleged pre-death suffering.  Fed Defs.' Reply at 5.  The Court disagrees. Plaintiff's memorandum frequently refers to his contention that Mr. Pauline suffered severe psychic distress during the period preceding his death, and plaintiff cites record evidence in support of this contention, as well as in support of his argument that the defendants' alleged malpractice proximately caused this suffering.  See Pl.'s Opp. at 50, 60, 71, 85-86.  The Court concludes, therefore, that plaintiff has not conceded these points in favor of the defendants. They will be discussed infra at 7-9.

### B.  "Suicide Bar" Rule

The Federal Defendants next contend that District of Columbia law forecloses a negligence action for damages stemming from a suicide, and they therefore maintain that plaintiff's wrongful death claims, as well as his survival claims for damages directly attributable to Mr. Pauline's death, fail as a matter of law.  Fed. Defs.' MSJ at 33-35; see also Sunderland MSJ at 1 n.1 (incorporating this argument by reference).  The Court agrees with the Federal Defendants:  under District of Columbia law, plaintiff may not recover in negligence for the suicide of his father.  WMATA v. Johnson, 726 A.2d 172, 177-78 (D.C. 1999) (en banc). Although there are two recognized exceptions to this rule, id. at 177 n.8, plaintiff invokes neither

---

[3]  The parties are in agreement that District of Columbia law governs all claims in this action, which, as to the Federal Defendants, is brought under the Federal Tort Claims Act.

4

of them. Instead, he maintains that the rule has no application where the decedent's self-inflicted death was not the result of a willful act, but instead occurred in the context of psychosis. See Pl.'s Opp. at 79-86; Pl.'s Resp. Supp. Auth. at 1-4. But plaintiff's argument does not accurately reflect the present state of District of Columbia law. See Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 127-29 (D.C. Cir. 2012). Accordingly, the Court will grant judgment to the defendants with respect to plaintiff's claims for damages arising directly from his father's death. This means that the only damages potentially available to plaintiff are those stemming from his survival claims based on his father's alleged pre-death suffering.

## C. National Standard of Care

Under the Federal Tort Claims Act, the United States waives its sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As noted already, District of Columbia law governs this case.

"In a medical malpractice action, the plaintiff carries the burden of establishing, through expert testimony, 'the applicable standard of care, deviation from that standard, and a causal relationship between the deviation and the injury.'" Nwaneri v. Sandidge, 931 A.2d 466, 470 (D.C. 2007) (quoting Travers v. Dist. of Columbia, 672 A.2d 566, 568 (D.C. 1996)); see Cárdenas v. Muangman, 998 A.2d 303, 306 (D.C. 2010) ("Because these issues are distinctly related to some science, profession, or occupation, expert testimony is usually required to establish each of the elements, except where the proof is so obvious as to lie within the ken of the average lay juror.") (quoting Washington v. Washington Hosp. Ctr., 579 A.2d 177, 181 (D.C.

1990)) (internal quotation marks omitted).  Furthermore, "[i]n the District of Columbia, the applicable standard of care in a medical malpractice action is 'a national standard, not just a local custom.'"  Nwaneri v. Sandidge, 931 A.2d at 470 (quoting Travers v. Dist. of Columbia, 672 A.2d at 568).  The D.C. Court of Appeals therefore has "consistently held that '[t]he personal opinion of the testifying expert as to what he or she would do in a particular case, without reference to a [national] standard of care, is insufficient to prove the applicable standard of care.'"  Id. (quoting Strickland v. Pinder, 899 A.2d 770, 773 (D.C. 2006)).  The plaintiff's expert must "present evidence that is sufficient to enable the fact-finder to find the national standard of care [by a preponderance of the evidence]."  Cárdenas v. Muangman, 998 A.2d at 307.

Plaintiff submits the opinions of three experts:  a nurse, a psychiatrist, and a social worker.  Each of these experts has submitted a written report and has provided deposition testimony with respect to the standard of care for his or her professional specialty, opining that the defendants' conduct deviated from those standards.  The Federal Defendants argue that none of plaintiff's experts has made a showing sufficient to enable the fact-finder to find the existence of a national standard of care.  Fed. Defs.' MSJ at 26-30, 35-38.  Rather, the Federal Defendants maintain, each expert has offered an opinion reflecting only his or her personal view regarding the defendants' care of Joseph Pauline.

The Court has reviewed the reports and the deposition testimony of Ms. Darlington, Dr. Bursztajn, and Dr. Mirabito, and it concludes that there are genuine issues of material fact with respect to the existence of national standards of care applicable to the defendants' conduct.[4]  The ultimate sufficiency of plaintiffs' expert evidence will, of course, be

---

[4]  The Court reaches this conclusion without reference to plaintiff's supplemental expert affidavits, which the Federal Defendants and Dr. Sunderland contend are not properly before the Court.

evaluated at trial after direct and cross-examination of the experts. If, at that time, plaintiffs' experts fail to demonstrate that their opinions reflect and are based upon national standards of care, the Court will grant judgment to the defendants. At this juncture, however, the Court concludes that judgment cannot be granted to the defendants based on purported deficiencies in plaintiffs' expert evidence. Rather, genuine issues of material fact remain with respect to the establishment of national standards of care, and these questions must be resolved at trial.

### D. Genuine Issues of Material Fact Also Remain Regarding Joseph Pauline's Suffering Prior to his Suicide

Finally, the Federal Defendants argue that plaintiff has failed to raise genuine issues of material fact concerning whether Joseph Pauline actually suffered inordinate mental distress during the months preceding his death, as well as whether, if he did, the defendants caused that suffering. Fed. Defs.' MSJ at 4, 40-41; Fed. Defs.' Reply at 5.

With respect to the first question, the record amply indicates the existence of factual questions regarding whether Mr. Pauline experienced serious psychic distress preceding his suicide. The record shows that Mr. Pauline placed daily telephone calls to his daughter during the week prior to his death, in which he made statements suggesting that he felt other residents bore malice toward him, suggesting that his paranoia was waxing. See generally Deposition of Gina Elizabeth Walters (June 13, 2011) (Pl.'s Ex. 27) [Dkt. No. 75-2]. In addition, Mr. Pauline reported to his caregivers at various points during the period from August to October 2007 that he was concerned that he had done something wrong and that others were out to get him. See AFRH Nursing Notes at 6 [Dkt. No. 70-43] (note written by Nurse Georgia Ladell Brown on August 15, 2007); Doctor's Note (Pl.'s Ex. 22) [Dkt. No 75-2] (note written by Dr. Sunderland on October 18, 2007). Furthermore, plaintiff's psychiatric expert has opined that

7

Pauline experienced "conscious pain and suffering during the autumn of 2007," Report of Harold J. Bursztajn (Sept. 29, 2009) at 2 [Dkt. No. 70-48], as well as that by October, Mr. Pauline's "situation had deteriorated so far, he had become so impaired, so paranoid, that a hospitalization was warranted." Deposition of Harold J. Bursztajn (June 29, 2011) at 99:4-7 [Dkt. No. 75-2]; see also id. at 131:24-132:2, 132:21-22 (opining that Pauline experienced "crescendoing paranoia" and a "crescendo of terror"). Genuine issues of material fact therefore exist with respect to Mr. Pauline's alleged suffering during the weeks and months preceding his suicide.

This leaves the question of causation. "To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." Dist. of Columbia v. Watkins, 684 A.2d 395, 402 (D.C. 1996) (quoting Psychiatric Inst. of Washington v. Allen, 509 A.2d 619, 624 (D.C. 1986)). The Federal Defendants argue that "Plaintiff has not adduced any evidence that any actions of AFRH or its staff or contractors caused [Mr. Pauline] emotional distress." Fed. Defs.' MSJ at 41. Plaintiff's theory of the case, however, is that the defendants collectively failed to recognize his father's escalating psychosis and consequently failed to intervene to halt this escalation. Had they done so, plaintiff contends, his father's mental suffering would not have continued to wax until he reached a breaking point. Plaintiff's three experts offer opinions in support of this theory, in which they opine that the defendants breached applicable standards of care for nursing, psychiatry, and social work by failing to take accurate account of Mr. Pauline's deteriorating mental state and by failing to appropriately intervene therapeutically. The Court concludes that genuine issues of material fact remain to be resolved regarding whether these alleged breaches, or any of them, proximately caused any undue suffering experienced by

Mr. Pauline during the period prior to his death.  And those are questions for the fact-finder at trial.

## II.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Federal Defendants' motion for summary judgment [Dkt. No. 70] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that Dr. Pearson Sunderland's motion for summary judgment [Dkt. No. 68] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the motion for summary judgment filed by Professional Services of America, Inc. and Ms. Viola Johnson-Robinson [Dkt. No. 69] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that in view of the bar on negligence actions for damages arising from a suicide, judgment is granted to each defendant with respect to plaintiff's claims stemming directly from the suicide of Mr. Joseph Pauline; it is

FURTHER ORDERED that the Federal Defendants shall not be liable for any malpractice committed by Dr. Pearson Sunderland or Ms. Viola Johnson-Robinson; and it is

FURTHER ORDERED that on or before April 3, 2015, the parties shall file in writing a joint status report indicating their respective views on how this case should proceed, including whether the parties request referral to the United States District Court Mediation Program, which is administered by the Office of the Circuit Executive, see LOC. CIV. R. 84.4, or whether they wish to pursue settlement discussions with the aid of a magistrate judge.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 13, 2015